## IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

GLENN DEFENSE MARINE (ASIA), PTE LTD.,

*Plaintiff-Appellant*,

v.

UNITED STATES,

*Defendant-Appellee,*

and

MLS-MULTINATIONAL LOGISTIC SERVICES LTD.,

*Defendant-Appellee.*

ON APPEAL FROM THE COURT OF FEDERAL CLAIMS
IN CASE NO. 11-CV-718,
JUDGE MARIAN BLANK HORN

PETITION FOR REHEARING *EN BANC*
OF PLAINTIFF-APPELLANT
GLENN DEFENSE MARINE (ASIA) PTE LTD.

HOLLAND & KNIGHT LLP
David S. Black
Gregory R. Hallmark
1600 Tysons Blvd., Ste. 700
McLean, VA  22102
(703) 720-8600

*Counsel for Glenn Defense Marine (Asia), Pte. Ltd.*

Dated:  August 9, 2013

# CERTIFICATE OF INTEREST

Counsel for Glenn Defense Marine (Asia) Pte Ltd. certifies the following:

1. The full name of every party or amicus represented by me is:

Glenn Defense Marine (Asia), Pte Ltd.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

David S. Black, Partner, Holland & Knight LLP;
Gregory R. Hallmark, Associate, Holland & Knight LLP; and
Jacob W. Scott, Associate, Holland & Knight LLP (no longer with firm)


August 9, 2013                          /s/ David S. Black
Date                                    Signature of counsel

                                        David S. Black
                                        Printed name of counsel

# TABLE OF CONTENTS

CERTIFICATE OF COUNSEL ................................................................................1

INTRODUCTION ...............................................................................................2

BACKGROUND ................................................................................................3

ARGUMENT ......................................................................................................6

I.     In Upholding the Navy's Arbitrary Evaluation of GDMA's Past Performance, the Panel Failed to Meaningfully Apply Supreme Court Precedent on the Scope of Judicial Review Under the APA..........................7

II.    The Panel's Ruling that GDMA was Not Prejudiced is Contrary to the Standard Established in Prior Federal Circuit Bid Protest Cases..................11

CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

Alabama Aircraft Industries, Inc.–Birmingham v. United States,
  586 F.3d 1372 (Fed. Cir. 2009) ...............................................................7

Allied Tech. Group, Inc. v. United States,
  649 F.3d 1320 (Fed. Cir. 2011) .............................................................12

Bannum, Inc. v. United States,
  404 F.3d 1346 (Fed. Cir. 2005) .............................................................14

Bayfirst Solutions, LLC v. United States,
  102 Fed. Cl. 677 (2012)..........................................................................13

Camp v. Pitts,
  411 U.S. 138 (1973) .................................................................................8

Glenn Defense Marine (Asia) Pte Ltd. v. United States,
  105 Fed. Cl. 541 (2012).......................................................................5, 14

Information Tech. & Applications Corp. v. United States,
  316 F.3d 1312 (Fed. Cir. 2003) .............................................................12

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
  463 U.S. 29 (1983) ......................................................................... 7, 8, 11

SEC v. Chenery Corp.,
  332 U.S. 194 (1947) .................................................................................8

# CERTIFICATE OF COUNSEL

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedent of this court:  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 (1983); Camp v. Pitts, 411 U.S. 138 (1973); SEC v. Chenery Corp., 332 U.S. 194 (1947); Alabama Aircraft Industries, Inc.–Birmingham v. United States, 586 F.3d 1372 (Fed. Cir. 2009).

Based on my professional judgment, I believe this appeal requires an answer to one or more precedent-setting questions of exceptional importance:

Whether an agency acts without a rational basis when it fails to articulate a rational explanation for disregarding material facts in the record that facially conflict with its chosen action?

Whether a court reviewing a bid protest may supply a rational basis for the agency's action that the agency itself did not articulate in the record?

Whether, to demonstrate prejudice in a best-value procurement, a bid protester must show that it would have been evaluated equal to or better than the awardee in *all* evaluation factors but for challenged errors?

Whether a bid protester must present direct evidence of prejudice?

/s/ David S. Black
Attorney of Record for Plaintiff-Appellant

# INTRODUCTION

This case presents important questions about the proper role of the Court of Federal Claims and the Federal Circuit in reviewing federal procurement decisions under the Administrative Procedure Act ("APA") standard of review.

In this procurement, the Navy awarded a contract to an offeror whose price was 64% higher that of Glenn Defense Marine (Asia) Pte Ltd. ("GDMA"), due to the Navy's distorted interpretation of the GDMA's past performance record. Specifically, the Navy evaluated GDMA's past performance as "Less than Satisfactory," lower than any of GDMA's customers had rated its performance. The Navy blew out of proportion a few negative comments about GDMA's performance, ignoring the fact that those comments were made by customers who uniformly were satisfied with GDMA's performance.

Rather than act as the meaningful check on arbitrary administrative action that the APA contemplates, the panel articulated a rational basis for the agency action that was not present in the administrative record and approved an agency decision that facially conflicted with the evidence before it, without requiring the agency to express a rational connection between the evidence and the decision. Further, the panel made a ruling in dicta that effectively heightened this Circuit's standard for proving prejudice to the protester.

The Court should rehear this case and reverse the panel's decision.

# BACKGROUND

This case centers around a Navy procurement of maritime husbanding services for Navy ships visiting various ports in South Asia. (Op. at 2-3.)[1] The solicitation contemplated the award of a contract to the offeror whose proposal was the "most advantageous to the government," considering technical approach, past performance, and price. (Op. at 3.)

The Navy simultaneously conducted procurements for four husbanding services contracts for four different regions in the Western Pacific and Indian Ocean. (Op. at 2-3.) GDMA was awarded the contract for each of the other three regions. (A101.) But the Navy awarded the contract for Region 1, South Asia, to Appellee MLS-Multinational Logistic Services Ltd. ("MLS"), at a 64% price premium over GDMA's evaluated price. (A1665.) The Navy considered the offerors "equal" in the technical factor, rating both proposals "Better." (A1665, A1675-76.) Critically, the Navy rated GDMA's past performance "Less than Satisfactory" and MLS's "Better." (A1665, A1676.) The difference in past performance evaluations was the basis for the Navy's decision to award the contract to MLS. (A1676-78 (selection decision document).)

---

[1] Citations to "Op." in this Petition refer to the panel's majority opinion. The panel's majority and dissenting opinions are attached hereto as Addendum A.

The Navy based its past performance evaluations on questionnaires completed by the offerors' customers. Each questionnaire requested an overall performance rating and sub-ratings in various areas, and also contained a space for narrative comments. (See A607-14.) Of the five questionnaires received from GDMA's customers, two rated GDMA's overall performance "Outstanding," two "Better," and one "Satisfactory." (A607-14.) None rated GDMA's overall performance "Less than Satisfactory." (See id.) All of GDMA's customers wrote narrative comments, some positive and some negative. (See id.)

The Navy's past performance evaluation team ("PPET") initially rated GDMA's past performance Satisfactory. (Op. at 7.) However, the PPET suddenly downgraded GDMA's rating to Less than Satisfactory after a member of the Navy's "contract review board"—who had reviewed an evaluation report that did not state the questionnaires' overall performance ratings (see A893-94)— suggested that GDMA's past performance might not warrant a Satisfactory rating because of the negative comments. (Op. at 7.) Based on no new past performance information, the PPET immediately amended its report to reduce GDMA's rating to Less than Satisfactory. (A923-25; Op. at 8.) The administrative record contains no articulation by the Navy of why it determined that GDMA's past performance was worse than any of the customers believed it was.

GDMA sought judicial review of the award to MLS at the Court of Federal Claims ("CFC"). Among other challenges, GDMA argued that the Navy's failure to consider the fact that all of GDMA's customers rated its performance as Satisfactory, Better, or Outstanding rendered the Navy's Less than Satisfactory rating of GDMA's past performance arbitrary. The CFC granted judgment on the administrative record for the Government, holding that the Navy's evaluations and source selection were reasonable in all respects and that GDMA was not prejudiced because it was "not at all clear" that it would have won the contract even with a Satisfactory rating. See Glenn Defense Marine (Asia) Pte Ltd. v. United States, 105 Fed. Cl. 541, 572 (2012); A2-55.

On appeal, the panel affirmed the CFC's decision in a 2-1 decision. The majority opinion held that the GDMA's rating of Less than Satisfactory was justified by the negative comments in some of the questionnaires because those comments "detracted from" the overall ratings of Satisfactory, Better, and Outstanding. (Op. 13-17.) The panel further held in dicta that the CFC did not clearly err in finding that the alleged evaluation errors were not prejudicial because, even with a rating of Satisfactory, GDMA's past performance still would have been inferior to MLS's and GDMA provided "nothing but conjecture" that it would have won the award. (Op. 19-21.)

Judge Moore dissented from the panel's majority opinion. Judge Moore argued that the Navy's evaluation of GDMA's past performance lacked a rational basis because the Navy gave GDMA a lower rating than any of the customer references had and because the Navy "weighed the negative comments on the questionnaires far more heavily than the references themselves did." (Dissent Op. at 3.) Judge Moore also found that GDMA was prejudiced by the error, because its large price advantage over MLS and its equivalency in areas other than past performance indicated that "it would have had a substantial chance to receive the contract but for the Navy's errors regarding past performance." (Dissent Op. at 4.)

## ARGUMENT

Rehearing en banc is warranted because the panel's decision is inconsistent with the Supreme Court's and this Court's precedents and involves questions of exceptional importance. *See* Fed. R. App. P. 35(a)(1), (2). As discussed below, the panel's decision conflicts with fundamental principles of the Supreme Court's APA jurisprudence and accordingly raises important questions about the applicability of those fundamental principles to the bid protest context. Additionally, the panel's decision establishes a higher standard for proving prejudice in bid protest cases than this Court has ever previously required.

I.   In Upholding the Navy's Arbitrary Evaluation of GDMA's Past Performance, the Panel Failed to Meaningfully Apply Supreme Court Precedent on the Scope of Judicial Review Under the APA

Applying the APA standard of judicial review, the Supreme Court has held that an agency acts in an "arbitrary and capricious" manner if it does not "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). A court conducting judicial review under the APA "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Motor Vehicle Mfrs., 463 U.S. at 43. The Supreme Court has articulated the following scenarios in which an agency action would normally be deemed arbitrary and capricious:

> if the agency has relied on factors which Congress has not intended it to consider, *entirely failed to consider an important aspect of the problem*, *offered an explanation for its decision that runs counter to the evidence before the agency*, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Id. at 43 (emphasis added); see also Alabama Aircraft Industries, Inc.–Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (applying the quoted standard in the bid protest context).

Further, the Supreme Court warned that where the agency has failed to establish a rational basis, "[t]he reviewing court should not attempt itself to make up for such deficiencies: We may not supply a reasoned basis for the agency's action that the agency itself has not given." Motor Vehicle Mfrs., 463 U.S. at 43. "The validity of the [agency's] action must, therefore, stand or fall on the propriety of" the agency's explanation for its action. Camp v. Pitts, 411 U.S. 138, 143 (1973). In SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), the Supreme Court declared "a simple but fundamental rule of administrative law":

> That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

The panel failed to meaningfully apply this binding precedent. Rather, the panel permitted the Navy to act in a manner that ran counter to the evidence before it, disregarded the Navy's failure to "articulate a rational connection between the facts found and the choice made," and instead divined from the record a rational basis that the Navy itself did not articulate.

The panel held that the Navy rationally rated GDMA's past performance as Less than Satisfactory because some questionnaires contained negative comments and a few Less than Satisfactory subfactor ratings. (Op. at 13-17.) However, those same questionnaires also included overall performance ratings, and none rated GDMA's overall performance as lower than Satisfactory. (A607-14.) As Judge Moore aptly put it in the dissenting opinion: "GDMA received two 'Outstanding,' two 'Better,' and one 'Satisfactory' rating. In what universe do these ratings average out to an overall rating of 'Less than Satisfactory'?" (Dissent Op. at 3.) The Navy unreasonably contorted the facts by, in Judge Moore's words, "weighing the negative comments on the questionnaires far more heavily than the references themselves did." (Id.)

The panel validated this arbitrary conduct by averring, in conclusory fashion, that the Navy considered "all of the evidence before it." (Op. at 13.) But the Navy never expressly stated in the record any rational explanation for its determination that GDMA's past performance was worse than all of GDMA's references said it was. Rather than explain how the Navy had actually considered and reconciled the overall ratings, the panel summarily declared that the negative comments superseded the overall ratings: "Even though each reference rated GDMA's performance as 'Satisfactory' or 'Better' overall, *the narrative comments detracted from those ratings*." (Op. at 13.)

9

But the Navy itself did not articulate a finding, in any document within the administrative record, that the negative comments somehow invalidated the overall ratings. Indeed, the PPET's switch from Satisfactory to Less than Satisfactory came immediately after a contract review board member suggested that the negative comments might not warrant a Satisfactory rating, even though that board member *had not seen,* **and thus did not consider**, *the questionnaires' overall ratings*. The Navy did not reconcile the overall ratings at all.

Given the absence of any determination by the Navy that the negative comments detracted from the overall ratings, it seems that the panel simply assumed it. But the negative comments and overall ratings, which are found *on the same page* of each questionnaire, can and should reasonably be read in harmony— despite a few instances of less-than-stellar performance, GDMA's overall performance was Satisfactory, Better, or Outstanding. As Judge Moore stated, the overall ratings indicate that "GDMA's references … did not themselves believe that their own negative comments warranted such a low rating. GDMA's references were uniquely positioned to consider the appropriate impact to given their own negative comments on GDMA's overall rating, given their interaction with GDMA over the course of the contract at issue." (Dissent Op. at 3.)

By "supply[ing] a reasoned basis for the agency's action that the agency itself has not given," the panel overstepped the bounds of APA judicial review,

which is limited to determining whether the agency's stated reason for its action was rational.  See Motor Vehicle Mfrs., 463 U.S. at 43.[2]

The Court should take this opportunity to reinforce the bedrock principle of APA review that agency action is arbitrary when it is contrary to the evidence as reasonably interpreted and lacks any explanation rationally connecting the evidence to the choice made.  Further, the Court should clarify that a court applying the APA standard of review must not take it upon itself to supply a missing justification where the agency has failed to explain its action.

## II.  The Panel's Ruling that GDMA was Not Prejudiced is Contrary to the Standard Established in Prior Federal Circuit Bid Protest Cases

As the panel noted, to succeed in a bid protest, "the protester must show that it was prejudiced by the government's actions." (Op. at 20.)  This Court's standard

---

[2] Additionally, the panel erred when it cited a particular negative comment relating to "force protection"—three times in the opinion (Op. at 13-14 n.6, 14, 15 n.7)—as evidence that the Less than Satisfactory rating had a rational basis.  That comment was not, in fact, a basis for the Navy's decision to assess the Less than Satisfactory rating, as GDMA resolved that issue to the Navy's satisfaction in discussions.  (See A412 (GDMA's discussion response #2 on past performance regarding a "subcontractor management" issue related to "force protection services"); A1668 (Navy's Final Business Clearance Memorandum, stating that "[t]he PPET determined that GDMA's response to the past performance issue about subcontractor management satisfactorily resolved concerns with that past performance issue"); A1669 (Navy's Final Business Clearance Memorandum, stating a list of "[a]reas noted where GDM experienced past performance problems," not including anything about "force protection")).  The panel's error further evidences that it improperly substituted its own idea of a rational basis, rather than allowing the Navy's action to stand or fall on the Navy's rationale.

for prejudice is well established. "To show prejudice, the protester must show that but for the alleged error, there was a substantial chance that it would receive an award—that it was within the zone of consideration." Allied Tech. Group, Inc. v. United States, 649 F.3d 1320, 1326 (Fed. Cir. 2011). A protester establishes prejudice if it shows that "it had greater than an insubstantial chance of securing the contract if successful on the merits of the bid protest." Information Tech. & Applications Corp. v. United States, 316 F.3d 1312, 1319 (Fed. Cir. 2003). While the panel correctly repeated the "substantial chance" standard (Op. at 20), its holding that GDMA was not prejudiced would establish a new and substantially stricter standard for protesters to demonstrate prejudice.

The panel held, in dicta, that the CFC did not clearly err in finding that GDMA was not prejudiced by the Navy's failure to rate its past performance Satisfactory.[3] The panel approvingly quoted the CFC's statement that even if GDMA were rated Satisfactory, it "still would have had an inferior past performance rating as compared to MLS, and still would have had negative past

---

[3] It is not clear why the panel so limited its analysis of prejudice. GDMA could have received a Better past performance rating—four out of five questionnaires rated GDMA as Better or Outstanding, and only one as Satisfactory. Thus, Judge Moore noted that a rating as low as Satisfactory "seems inconsistent with the [questionnaires'] ratings themselves" and that "[c]ertainly this record would have supported a past performance rating of 'Better.'" (Dissent Op. at 2, 4.) Moreover, GDMA also alleged errors in the evaluation of MLS's past performance (not discussed here), which the panel apparently ignored in its prejudice analysis.

performance comments in the record." (Op. at 20.) The panel stated, "GDMA does not provide anything but conjecture that even with a 'Satisfactory' rating it would have had a substantial chance of prevailing in the bid." (Id. at 20-21.)

The CFC's quote, adopted by the panel, contradicts this Circuit's well-established "substantial chance" standard because it implies that, to demonstrate prejudice, GDMA was required to prove that it would have been evaluated at least as highly as MLS in past performance, if not for the Navy's errors. But an agency may, of course, select an offeror who proposes a lower price over another offeror whose non-price attributes are deemed superior. See Bayfirst Solutions, LLC v. United States, 102 Fed. Cl. 677, 695 (2012) (finding prejudice where lower-priced offeror "could easily have been much closer" to awardee in technical evaluation but for the evaluation errors). Here, GDMA offered a *much* lower price and was rated equal to MLS in non-price factors other than past performance. If not for the Navy's errors, GDMA's past performance evaluation would have been at least *closer*, and possibly equal, to MLS's. As Judge Moore argued, these facts amply demonstrate that GDMA would have had a substantial chance of winning the award but for the Navy's errors. (Dissent Op. at 4.) Indeed, if GDMA was equal to MLS in past performance, it *clearly* would have won the award because it would be equal or better in all evaluation factors. But "clearly" is not the standard for

prejudice.[4]  This court has held that the "substantial chance test is more lenient than showing actual causation, that is, showing that but for the errors [the protester] would have won the contract."  Bannum, Inc. v. United States, 404 F.3d 1346, 1358 (Fed. Cir. 2005).  The Court should take this opportunity to clarify that the "substantial chance" standard may be satisfied when a lower-priced protester would have had a *smaller* deficit in a non-price evaluation factor but for an error.

To the extent the panel intended with its statement that "GDMA does not provide anything but conjecture" to impose a requirement that a protester provide *direct* evidence of prejudice, this marks a monumental and troubling development in bid protest precedent.  Any allegation of prejudice will necessarily be hypothetical because it envisions a counter-factual scenario in which the alleged errors did not occur.  The only sort of direct evidence conceivable—an admission by the agency that the protester would have won but for the challenged evaluation error—cannot reasonably be expected to exist in the record, even if there truly was

---

[4] Indeed, the CFC held that GDMA was not prejudiced because it was "not at all clear" that GDMA would have prevailed but for the alleged errors.  Glenn Defense Marine, 105 Fed. Cl. at 572, 576-77.  The panel excused this error by asserting, in conclusory fashion, that the trial court actually did apply the "substantial chance" standard.  (Op. at 21 n.9.)  That the CFC required GDMA to show that it would have been rated at least equally in past performance—*i.e.*, equal or better in *all* evaluation factors—demonstrates that the trial court actually meant what it said, that GDMA was not prejudiced unless it was "clear" that it would have won the award but for the alleged errors.  Because the CFC applied the wrong legal standard, its finding of prejudice was clear error.

a substantial chance that the protester would have won. The Court should repudiate this impossible standard.

## CONCLUSION

For the reasons set forth above, this Petition for Rehearing En Banc should be granted.

Dated: August 9, 2013                    Respectfully submitted,


   /s/ David S. Black
David S. Black
Gregory R. Hallmark
HOLLAND & KNIGHT LLP
1600 Tysons Boulevard, Suite 700
McLean, Virginia 22102
703-720-8600
703-720-8610 (facsimile)

*Counsel for Plaintiff-Appellant*
*Glenn Defense Marine (Asia), Pte*
*Ltd.*

# ADDENDUM A

# United States Court of Appeals for the Federal Circuit

---

**GLENN DEFENSE MARINE (ASIA), PTE LTD.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

AND

**MLS-MULTINATIONAL LOGISTIC SERVICES LTD,**
*Defendant-Appellee.*

---

2012-5125

---

Appeal from the United States Court of Federal Claims in No. 11-CV-718, Judge Marian Blank Horn.

---

Decided: June 25, 2013

---

DAVID S. BLACK, Holland & Knight, LLP, of McLean, Virginia, argued for plaintiff-appellant. With him on the brief was GREGORY R. HALLMARK.

ARLENE PIANKO GRONER, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee, United States. With her on the brief were STUART F. DELERY, Acting Assistant Attorney Gen-

eral, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

SARAH M. GRAVES, Husch Blackwell, LLP, of Washington, DC, argued for defendant-appellee, MLS-Multinational Logistic Services, LTD. With her on the brief were WALTER A.I. WILSON, DANIEL J. DONOHUE and CLAUDE P. GODDARD, JR.

---

Before MOORE, REYNA, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge WALLACH,*

Dissenting opinion filed by *Circuit Judge* MOORE.

WALLACH, *Circuit Judge.*

Glenn Defense Marine (Asia), PTE Ltd. ("GDMA") appeals from the order of the United States Court of Federal Claims granting the motions of the government and MLS-Multinational Logistic Services Ltd. ("MLS") for judgment on the administrative record. *Glenn Defense Marine (Asia), PTE Ltd. v. United States,* 105 Fed. Cl. 541, 583 (Fed. Cl. 2012).[1] Because GDMA failed to establish that the award of the contract to MLS was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we affirm the Court of Federal Claims.

## BACKGROUND

The United States Navy, Naval Supply Systems Command, Fleet Logistics Center Yokosuka ("Navy") solicited bids on November 3, 2009 for maritime husband-

---

[1]    Citations to the Court of Federal Claims decision are from the redacted version issued for publication July 17, 2012. The opinion was issued under seal on May 25, 2012.

ing support services to Navy ships visiting ports in four regions in the Western Pacific and Indian Ocean for separate negotiated procurements. Offerors were instructed to submit separate proposals for each region in which they sought a contract. The contract for each region would be "Firm-Fixed-Price Indefinite-Delivery, Indefinite-Quantity (IDIQ) type contract," with a twelve-month base period and four one-year options. Solicitation No. N62649-09-R-0041 ("Solicitation"). The Solicitation stated the Navy would award contracts to those proposals that would be "most advantageous to the Government." *Id.* ¶ OP-1.1. The solicitation also stated that, "[t]he following factors, in order of importance, shall be used to evaluate acceptable offers: Technical Approach, Past Performance, and Price. The non-price factors, when combined, are significantly more important than price." *Id.* ¶OP-1.8. The Navy stated it "may accept other than the lowest priced proposal." *Id.* ¶OP-1.5.

Offerors were instructed to submit a Past Performance Matrix, Past Performance Reference Information

Sheets, and other past performance information.[2] In its Past Performance Matrix an offeror was required to list "all directly related or similar Government or commercial contracts or subcontracts currently being performed, or completed in the past three years which are similar in scope, magnitude[,] and complexity to that which is detailed in this Solicitation." Solicitation ¶ 5.2. Offerors were also instructed to submit a Past Performance Reference Information Sheet identifying three to five individuals from the contracts listed in the Past Performance Matrix to provide references. The Technical Evaluation Board and the Past Performance Evaluation Team ("Evaluation Team") evaluated the offers using an adjectival rating accompanied by a narrative to explain the basis for the adjectival rating selected: "Outstanding," "Better," "Satisfactory," "Less than Satisfactory," or

_____

[2] The Solicitation explains:

Past Performance is a measure of the degree to which an offeror satisfied its customers in the past by performing its contractual obligations on relevant directly related contracts and subcontracts (or partnerships or joint ventures) that are similar in scope, magnitude, and complexity to that required by the solicitation (completed within the past 3 years or currently in progress). There are four areas to be reviewed: Level of Capability, Efficiency, and Effectiveness in Providing Service; Conformance to the Terms and Conditions of the Contract; Level of Reasonableness and Cooperation; and Level of Commitment to Good Customer Service. Under the Past Performance factor, each of the areas to be reviewed will be given equal consideration.

Solicitation at ¶ OP-18.2.1.

"Neutral." These reports would be provided to the Procuring Contracting Officer/Source Selection Authority who would compare the strengths and weaknesses and make a source selection decision. After all proposals were assigned a set of adjectival ratings, the Navy would engage in negotiations with the offerors. After these negotiations the Navy would determine which proposal provided the best value to the Navy by engaging in a trade-off process. The contract would be awarded to the best value proposal.[3]

---

[3] 48 C.F.R. § 15.101-1 states:

(a) A tradeoff process is appropriate when it may be in the best interest of the Government to consider award to other than the lowest priced offeror or other than the highest technically rated offeror.

(b) When using a tradeoff process, the following apply:

(1) All evaluation factors and significant subfactors that will affect contract award and their relative importance shall be clearly stated in the solicitation; and

(2) The solicitation shall state whether all evaluation factors other than cost or price, when combined, are significantly more important than, approximately equal to, or significantly less important than cost or price.

On August 12, 2010, GDMA and MLS submitted their proposals for the Region 1, South Asia, contract. The Evaluation Team received responses to reference questionnaires from four of GDMA's references and from one contracting officer on a relevant contract. Each past performance questionnaire asked the reference to provide an overall rating of GDMA's performance, a rating for various subfactors, and left space for the reference to provide additional comments. The Evaluation Team determined that one of GDMA's reference contracts was highly relevant while the other three were moderately relevant. For the highly relevant contract, reviewers gave overall evaluations of "Better" or "Satisfactory." The Husbanding Branch Chief for the highly relevant contract assessed GDMA's overall performance as "Satisfactory." However, he gave GDMA a "Less than Satisfactory" rating for several subfactors, including ease of communication, timely response to problems and ability to find effective solutions, and performance within negotiated price. J.A. 613. In the narrative comments the Husbanding Branch Chief noted that a number of pre-visit estimates were received late, government specialists routinely needed to request corrections, and email responses were routinely delayed. The review also noted two past performance letters sent to GDMA: one for not providing force protection barriers and the other for failing to provide a proposed pricing plan. A reviewer of one of the moderately relevant contracts indicated an

---

(3) This process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal. The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documented in the file in accordance with 15.406.

overall evaluation of "Outstanding," but noted that GDMA had received a past performance letter about their customer service not being responsive.

In its initial summary report, the Evaluation Team assigned GDMA an overall past performance rating of "Satisfactory." J.A. 536. In its report it cautioned that although the references all gave GDMA overall ratings of "Satisfactory" or better, those rating were not substantiated with narrative comments, which instead provided more support for the "Less than Satisfactory" ratings assigned for several subfactors. The report referenced the negative comments identified in the reviewers' narratives: non-responsiveness by customer service representatives, late or incomplete pre-port visit estimates, a negative past performance letter regarding force protection barriers, failure to provide a pricing plan, delinquent payments, and general non-responsiveness in communications.

On November 4, 2010, the Evaluation Team forwarded its assessments to the primary contracting officer who, that same day, forwarded a draft of the pre-negotiation Business Clearance Memorandum to a member of the Contract Review Board ("Board"). The memorandum assigned GDMA an overall performance rating of "Satisfactory" but also reflected the concerns raised in the past performance questionnaires. *Glenn Defense Marine*, 105 Fed. Cl. at 551. A Board member raised concerns with the primary contracting officer over the "Satisfactory" rating which, in his opinion, "appear[ed] dubious at best." *Id.* (internal quotation marks omitted). After discussing the matter with the Evaluation Team, the primary contracting officer responded that it was a borderline decision. *Id.* The Evaluation Team Chairman indicated to the other reviewers that, in light of the Board member's concern about the "Satisfactory" rating, "[i]t may be easier for us to adjust the ratings downward based on the currently available negative" comments, rather than attempt to substantiate the "Satisfactory" rating. *Id.* (internal quotation marks omitted).

Thereafter two Evaluation Team members submitted revised ratings for GDMA, reporting an overall rating for GDMA's past performance as "Less than Satisfactory." *Id.* at 551–52. Their comments were similar to those in their initial reviews, adding that the information was highly relevant to the region and substantiated by specific and detailed comments, and that the "[l]ack of effective management of subcontractors' performance and controlling contract cost had an overall effect on substandard business practices of which savings to the Government was [sic] not always maximized during port visits." *Id.* at 552 (internal quotation marks omitted).

The Evaluation Team awarded MLS a past performance rating of "Better," with summary notes indicating "[t]he offeror was very cooperative and committed to customer service. This meant that the offeror's past performance record led to a strong expectation of customer satisfaction and successful performance." *Id.* (internal quotation marks omitted). In each element of each area, the Evaluation Team noted that there were no major issues or weaknesses.

After initial evaluations were completed, a Business Clearance Memorandum was drafted and the primary contracting officer sent questions to both GDMA and MLS and asked each to submit a final proposal. The primary contracting officer raised eight past performance issues with GDMA based upon comments in the questionnaires.[4] No past performance questions were asked of MLS. In considering GDMA's responses one reviewer noted that the majority of the corrective actions could not be verified

---

[4]  These questions inquired about personnel responsiveness and communication difficulties, significant differences in estimated prices and final invoices, failure to provide purchasing plans, and failure to obtain required compensation for non-priced items.

and the responses did "not fully address the is-
sues/deficiencies although some of their responses seem
reasonable to resolve them." *Id.* at 553 (internal quotation
marks omitted). The primary contracting officer stated
that GDMA's "response to the past performance issue
about subcontractor management satisfactorily resolved
the concerns with that past performance issue. GDM[A]'s
response to the other 7 issues did not satisfactorily resolve
the past performance concerns raised by the [Evaluation
Team]." *Id.* (internal quotation marks omitted).

In the final evaluation both GDMA and MLS achieved
a Technical Approach rating of "Better" and a Security
Plan rating of "Acceptable." *Id.* GDMA's past perfor-
mance rating was "Less than Satisfactory," while MLS's
past performance rating was "Better." However, MLS's
price was $989,214.00 higher than GDMA's price.

The primary contracting officer noted that GDMA and
MLS had relatively equal technical evaluations, but that
MLS's past performance rating was higher; thus when
combining the non-price factors together, MLS was rated
higher than GDMA. Because of the difference in price, a
trade-off analysis was required to determine the best
value proposal. After performing the trade-off analysis,
the primary contracting officer concluded that MLS's
proposal was the most advantageous and awarded MLS
the contract, Contract No. N62649-11-D-0015, on June 24,
2011.

GDMA filed a protest at the Government Accountabil-
ity Office ("GAO") on July 5, 2011. GDMA argued, in
part, that the negative comments should not have been
weighted as heavily in evaluation of its past performance.
The GAO found that "'the Navy reasonably concluded that
MLS's past performance offered a clear advantage over
the past performance of GDMA, and the Navy reasonably
documented its decision to select MLS over GDMA for this
reason.'" *Id.* at 556 (quoting *In re Glenn Defense Marine-
Asia PTE, Ltd.*, B-402687.6; B-402687.7, 2011 WL
6947628, at *8 (Comp. Gen. Oct. 13, 2011) ("GAO Deci-

sion")).  GAO denied the protest.  GDMA then filed its bid protest with the Court of Federal Claims.  The Court of Federal Claims denied GDMA's motion for judgment on the administrative record and request for injunctive relief and granted the Navy and MLS's motion for judgment on the administrative record.  GDMA timely appealed to this court, which has jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review the grant of a motion for judgment upon the administrative record in bid protest actions *de novo*. *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1329 (Fed. Cir. 2004).  In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial. 28 U.S.C. §1491(b)(4) (adopting the standard of 5 U.S.C. § 706); *see Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  "The court's task is to determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1285-86 (Fed. Cir. 2010) (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009)).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks and citation omitted).  *De minimis* errors in the procurement process do not justify relief. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996).  The protestor bears the burden of proving that a significant error marred the procurement in question. *Id.*  The protestor's burden is greater in negotiated procurement, as here, than in other

types of bid protests because "'the contracting officer is entrusted with a relatively high degree of discretion.'" *Galen*, 369 F.3d at 1330 (quoting *Burroughs Corp. v. United States*, 617 F.2d 590, 597 (Ct. Cl. 1980)). "[T]he greater the discretion granted to a contracting officer, the more difficult it will be to prove the decision was arbitrary and capricious." *Burroughs*, 617 F.2d at 597. Moreover, this court accords contracting officers an even greater degree of discretion when the award is determined based on the best value to the agency. *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996). Ultimately, to prevail in a bid protest, the protestor must show prejudicial error. *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996).

GDMA argues that the Navy's best value determination and award of the Region 1 contract to MLS was arbitrary and capricious due to its reliance upon the Evaluation Team's flawed evaluation of GDMA and MLS. GDMA asserts that the Navy's rating of GDMA's past performance as "Less than Satisfactory" and its rating of MLS's past performance as "Better" both lacked rational bases and were inconsistent with the record evidence. In addition, GDMA asserts that the Court of Federal Claims misapplied the standard for determining prejudice. We address each argument in turn.

## I. The Navy's Best Value Determination Was Not Arbitrary And Capricious

"Procurement officials have substantial discretion to determine which proposal represents the best value for the government." *E.W. Bliss*, 77 F.3d at 449. In this case, the Navy's best value decision is supported by the record and well within the substantial discretion of the contracting officials. After considering all of the offerors' proposals, references, and corrective actions, the Navy reasonably determined that an award to MLS would provide the best value. In particular, the Navy reasonably compared the negative comments in GDMA's relevant references and GDMA's inadequate corrective action to

the reviews of MLS, which contained no negative feed-
back. The contracting officer determined that although
there was a price difference between GDMA's final pro-
posal and MLS's final proposal, MLS had superior past
performance and would ultimately provide the best value
to the Navy. This was consistent with the Solicitation,
which expressly stated that non-price factors were signifi-
cantly more important than price. Even considering
price, the contracting officer reasonably found the real
cost to the Navy might actually be higher if the award
went to GDMA because of increased administration costs
resulting from GDMA's documented non-responsiveness
in communications, late estimates, etc.[5] Based on the
record and recognizing the broad discretion courts afford
agencies in the negotiated procurement process, the
Navy's best value determination was not arbitrary, capri-
cious, or in violation of law.

---

[5] GDMA contends that the trade-off analysis does
not explain why an award to GDMA over MLS would
require enhanced contract oversight and management.
However, the primary contracting officer explained that
the increased costs may be necessary to mitigate risks
expected based upon GDMA's past performance. Due to
GDMA's documented lack of responsiveness, the primary
contracting officer deduced that a contract with GDMA
would require additional contract administration costs
from a recurring need for contracting officials to follow-up
with GDMA on material issues such as late pre-port cost
estimates, lack of response to correspondence, and pricing
issues. The primary contracting officer based his projec-
tion of future increased contract administration costs on
the follow-up needed with GDMA in the past. The prima-
ry contracting officer adequately explained the factors
considered.

## II. GDMA's Past Performance Evaluation Did Not Lack Rational Basis

GDMA argues that the Navy's past performance rating of "Less than Satisfactory" is inconsistent with the record evidence because the references upon which the Evaluation Team relied all rated GDMA's overall performance as "Satisfactory" or better. However, GDMA cites no reason why the Navy should have only considered the overall ratings and disregarded the subfactor ratings and narrative comments. The Navy's decision was rationally based on its evaluation of all of the evidence before it. Even though each reference rated GDMA's performance as "Satisfactory" or "Better" overall, the narrative comments detracted from those ratings. The Navy reasonably considered the entire record, including several "Less than Satisfactory" subfactor ratings and negative comments from the narrative portion of the questionnaires.[6] The

------

[6] The dissent cites to the overall and subfactor ratings as if these adjectival ratings can be added up and "averaged out" to score the contractor. Dissent Op. 3-4. However, these reports are not subject to a mathematical calculation. The Evaluation Team considered the adjectival ratings in light of the accompanying narrative comments, which was within their discretion. *E.W. Bliss*, 77 F.3d at 449 (discussing the substantial discretion with which procurement officials are entrusted to find the best value for the government). Moreover, notwithstanding the single positive comment the dissent cites, Dissent Op. at 3–4, the reviewer also noted that GDMA's "prices for the non-contract are rather high and attempt to negotiate the cost seem pointless." J.A. 611. Additionally, she commented that there were "[n]o major issues under the purview of this contract except the DAO Representative in India complained about their services during the USS Shiloh and USS Lassen visit to GOA in Apr 10. He complained about GDMA's inability to provide pier side force protection services utilizing containers. The pier area

evaluation Team's report stated that "[o]verall, [GDMA] was less than fully cooperative and did not demonstrate a commitment to service." *Glenn Defense Marine*, 105 Fed. Cl. at 554 (internal quotation marks omitted). The primary contracting officer observed that the majority of GDMA's re-visit estimates for port visits were received late and repeatedly required corrections. He also indicated that GDMA had failed to provide force protection barriers as specified by the ships in their order. In another instance, GDMA failed to provide a pricing plan, which was necessary to insure that non-priced items were fairly and reasonably priced. Finally, the primary contracting officer noted routine delays in GDMA's responses to questions, which "exacerbate[d] the short lead time for arranging port visit services." *Id.* at 566 (internal quota-

---

was not cordoned off appropriately." *Id.* At any rate, our role is not to search for statements that could support a reversal, but rather, to determine whether there was a rational basis for the Navy's decision.

tion marks omitted).[7]  The Evaluation Team's final Summary Report for GDMA indicated:

---

[7]    The primary contracting officer's notes stated:

1-6 of 9 pre-visit estimates for port visits covered by this contract from 27 OCT 09–present were received late.  In addition, the contract specialists at FISC Det. Singapore routinely have to request corrections to the PCEs received for port visits (e.g. not all items requested in the LOGREQ [logistical requirements] are included in the PCE [pre-visit cost estimates]).

2-A negative past performance letter regarding the USS LASSEN and USS Shiloh port visits to Goa, India was sent to GDMA on 6 July 10.  GDMA did not provide force protection barriers as specified by the ships in their ordering LOGREQs.  A complaint from State Department personnel in Goa led to the issuance of this past performance letter.

3-A negative past performance letter regarding performance under this contract was sent to GDMA on 14 JUN 10.  GDMA has not provided a proposed pricing plan for insuring that non-priced items are offered at fair and reasonable prices.  This pricing plan is a deliverable specified under this contract.  Fair and reasonable pricing for non-priced items is an unresolved issue under this contract.  The FISC Det. Singapore office has yet to receive competitive price quotations for any non-priced services provided under this contract.

> For Region 1, [GDMA's] past performance on pre-
> viously awarded relevant contracts did not meet
> some significant requirements. Although the offe-
> ror was generally responsive to changes in re-
> quirements, provided timely services and had
> reasonably good control over managing subcon-
> tractors, there were several noted deficiencies in
> its performance when it came to the reliability
> and consistency of its customer service practices,
> transparency in pricing and ease of communica-
> tions.

*Id.* at 554.

Moreover, the Navy's rating was not premised on these references alone. Before the Navy's final rating, the Navy gave GDMA an opportunity to respond to specific concerns. GDMA acknowledged those issues and explained it had taken or was in the process of taking corrective action. The Navy conducted a follow-up review and found that these corrective actions had not adequately addressed its concerns. In considering GDMA's corrective action in response to the negative reviews, the reviewer found GDMA's corrective action "lacked sufficient details for the [Evaluation Team] to determine the offeror's effectiveness in addressing the deficiencies." *Id.* In sum, GDMA's past performance record led the Evaluation Team "'to expect marginal customer satisfaction and less than fully successful performance.'" *Id.* (quoting the Evaluation Team's Summary Report).

---

4-Email responses from GDMA representatives to questions from the FISC Det. Singapore contract specialists are routinely delayed. The delayed responses exacerbate the short lead time for arranging port visit services.

*Glenn Defense Marine*, 105 Fed. Cl. at 566.

Based upon the broad discretion courts afford agencies in the procurement process and based upon the ratings and comments in the past performance questionnaires, the analysis and review performed by the Evaluation Team and the contracting officer, as well as the discussions between GDMA and the Navy, this court cannot conclude that the overall past performance rating of "Less than Satisfactory" lacked rational basis. The Navy established a rational basis for its decision, explaining that a higher rating was not substantiated by the comments, and the agency's reasonable interpretation of the facts is entitled to considerable deference.

III. MLS's Past Performance Evaluation Did Not Lack Rational Basis

GDMA asserts that the Navy's rating of MLS's past performance as "Better" was arbitrary and capricious on the grounds that the "underlying finding" that the contracts of MLS's subcontractors were highly relevant lacks a rational basis. GDMA asserts that the Evaluation Team could not provide a rational basis for finding the contracts performed by MLS's subcontractors were of similar scope, magnitude, and complexity to that in the Solicitation because the record is incomplete.

The Solicitation stated that "[p]ast [p]erformance is a measure of the degree to which an offeror satisfied its customers in the past by performing its contractual obligations on relevant directly related contracts and subcontracts . . . that are similar in scope, magnitude, and complexity to that required by the solicitation. . . ." Solicitation ¶ OP-1.8.2.1. It also stated that "[i]n the case of an offeror whose past performance is somehow not similar in scope, complexity, or magnitude, or otherwise lacks relevance to some degree then the Government will take this into consideration and evaluate accordingly . . .." *Id.* ¶ OP-1.8.2.4.

MLS's subcontracts involved husbanding services at many of the same ports covered by the Solicitation, for a

variety of vessels of various sizes that "'spend the majority of their useful life traveling from port to port,'" similar to the services required by this Solicitation. *Glenn Defense Marine*, 105 Fed. Cl. at 575 (quoting GAO Decision at *8). The Navy's determination of relevance is owed deference as it is among "the minutiae of the procurement process," which this court "will not second guess." *E.W. Bliss*, 77 F.3d at 449 (finding matters such "as technical ratings and the timing of various steps in the procurement" to involve discretionary determinations); *see also Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 718 (2010) ("Thus, when evaluating an offeror's past performance, the [Source Selection Authority] may give unequal weight, or no weight at all, to different contracts when the [Source Selection Authority] views one as more relevant than another.") (internal quotation marks and citations omitted); *PlanetSpace, Inc. v. United States*, 92 Fed. Cl. 520, 539 (2010) ("At the outset, it is important to note that what does or does not constitute 'relevant' past performance falls within the [Source Selection Authority's] considered discretion.").

Additionally, the Court of Federal Claims noted that there is no evidence that MLS's past performance would have been evaluated any lower than "Better" if the subcontractors' references were given less weight. The Evaluation Team's summary report indicated that:

> The offeror was very responsive to customer service issues, provided timely services, flexible when responding to changes in requirements, maintained control over managing subcontractors, was transparent in its pricing processes and was effective in communications. Overall, the offeror was very cooperative and demonstrated a commitment to customer service. There were no substantial problems or issues documented in this past performance assessment. Therefore, based upon the offeror's past performance record, it leads the

[Evaluation Team] to expect a strong customer satisfaction and fully successful performance.

*Glenn Defense Marine*, 105 Fed. Cl. at 555 (quoting the Evaluation Team's Summary Report).[8]  Accordingly, the Court of Federal Claims' determination did not lack rational basis.

## IV. GDMA Did Not Allege Prejudicial Error

If GDMA had prevailed in showing error in the award to MLS, it would also bear the burden of showing that error was prejudicial.  As discussed above, the Navy's past performance evaluations were rationally based.  Moreo-

––––––––––––––––––––

[8]  GDMA also argues that the Court of Federal Claims improperly relied on the Navy's submissions to GAO, which it argues are *post hoc* rationalizations, to support its decision.  The Navy's submissions to the GAO were those required by 31 U.S.C. § 3553(b)(2), and included an articulation of the agency's reasoning in response to the protest.  All of the materials submitted to the GAO are part of the administrative record before the Court of Federal Claims. 31 U.S.C. § 3556.  In a case involving a post-award conflict of interest investigation and analysis, this court noted that courts "reviewing bid protests routinely consider . . . evidence developed in response to a bid protest." *Turner Constr. Co. v. United States*, 645 F.3d 1377, 1386 (Fed. Cir. 2011). The Court of Federal Claims cited these submissions to support its finding that the subcontractors' references were highly relevant because they required services that were "similar in scope, magnitude, and complexity." *Glenn Defense Marine*, 105 Fed. Cl. at 573–74 (internal quotation marks omitted).  Even if the submissions were not appropriately considered, based upon the high ratings on all of the references and only positive comments, the Navy's rating of MLS's past performance does not lack a rational basis.

ver, the Court of Federal Claims was correct in finding that GDMA was not prejudiced by receiving a "Less than Satisfactory" rating, as opposed to a "Satisfactory" rating.

To prevail in a bid protest case, the protestor must show that it was prejudiced by the government's actions. *Bannum*, 404 F.3d at 1351. To establish prejudice, GDMA must show that there was a substantial chance it would have received the contract award but for the Navy's allegedly erroneous past performance rating. *See id.* at 1358; *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011); *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996). Unlike other issues in this case, prejudice is a question of fact that this court reviews for clear error. *Bannum*, 404 F.3d at 1353–54.

The Court of Federal Claims found that even if GDMA should have gotten a "Satisfactory" rating instead of "Less than Satisfactory" for past performance "it is not at all clear a trade-off analysis would have resulted in [GDMA] receiving the contract award." *Glenn Defense Marine*, 105 Fed. Cl. at 572. The court explained: "Even with a Satisfactory rating for past performance, [GDMA] still would have had an inferior past performance rating as compared to MLS, and still would have had negative past performance comments in the record, which [GDMA] did not challenge." *Id.* at 571. GDMA does not provide anything but conjecture that even with a "Satisfactory" rating it would have had a substantial chance of prevail-

ing in the bid.[9]   The Court of Federal Claims did not clearly err in finding GDMA had not shown prejudice from being rated "Less than Satisfactory" rather than "Satisfactory."

CONCLUSION

Accordingly, the Court of Federal Claims' decision is affirmed.

**AFFIRMED**

---

[9]   GDMA asserts that the court erred in "[r]equiring GDMA to establish that it is 'clear' that a trade-off analysis would have resulted in GDMA receiving [an] award." Appellant's Br. at 64. Contrary to GMDA's argument, the Court of Federal Claims did not require it to show it would 'clearly' have received the contract award but for the alleged error.   Rather, the Court of Federal Claims stated that "it is not at all clear" that GDMA would have received the contract award but for the past performance rating.   It thoroughly recited the "substantial chance" standard in its standard of review section, *see Glenn Defense Marine*, 105 Fed. Cl. at 558-59, and applied that standard in its analysis of the facts.

# United States Court of Appeals
# for the Federal Circuit

———————————

**GLENN DEFENSE MARINE (ASIA), PTE LTD.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

**AND**

**MLS-MULTINATIONAL LOGISTIC SERVICES LTD,**
*Defendant-Appellee.*

———————————

2012-5125

———————————

Appeal from the United States Court of Federal
Claims in No. 11-CV-718, Judge Marian Blank Horn.

———————————

MOORE, *Circuit Judge*, dissenting.

The majority in this case affirms the decision by the
Court of Federal Claims granting judgment on the admin-
istrative record in favor of the government. I dissent
because the court erred by concluding that the U.S. Navy
had a rational basis for finding that Glenn Defense Ma-
rine (Asia), PTE Ltd. (GDMA) deserved an overall rating
of "Less than Satisfactory" for its past performance. That
rating lacks a rational basis, both legally and mathemati-
cally. All of GDMA's references rated its past perfor-
mance as "Outstanding," "Better," or "Satisfactory."

As part of the U.S. Navy's process of awarding a contract for maritime husbanding services in the South Asia region, a Past Performance Evaluation Team (PPET) evaluated the offerors' past performance. The PPET was instructed to use adjectival ratings: "Outstanding," "Better," "Satisfactory," "Less than Satisfactory," or "Neutral."

Four of GDMA's references provided feedback regarding its past performance. The PPET determined that one of the prior contracts, the South Asia contract, was highly relevant to the contract at issue while the other three were moderately relevant. Of the moderately relevant contracts, two reviewers rated GDMA as "Outstanding" while the third gave it a rating of "Better." The reviewer for the highly relevant contract rated GDMA as "Better." The PPET received a second questionnaire regarding the South Asia contract from the contracting officer, who rated GDMA as "Satisfactory." The chart below summarizes the references' overall ratings of GDMA's past performance.

| Reference | Overall Rating |
|---|---|
| South Asia Contract<br>First Reference<br>Second Reference | Better<br>Satisfactory |
| Thailand Contract | Better |
| Singapore Contract | Outstanding |
| BIMET Contract | Outstanding |

Despite these high past performance ratings, the PPET gave GDMA an overall past performance rating of "Satisfactory." This seems inconsistent with the ratings themselves. Even more perplexingly, based on no new or

additional information, the PPET later revised GDMA's past performance rating downward to "Less than Satisfactory." The purported basis for such a low rating was negative comments that some of GDMA's references included in the past performance questionnaires they submitted. GDMA's references, however, did not themselves believe that their own negative comments warranted such a low rating. And GDMA's references were uniquely positioned to consider the appropriate impact to give their own negative comments on GDMA's overall rating, given their interaction with GDMA over the course of the contracts at issue. The PPET group, which decided to give GDMA a less than satisfactory rating, based their decision exclusively on these references; they had no additional or independent information which would warrant lowering the ratings. GDMA received two "Outstanding," two "Better," and one "Satisfactory" rating. In what universe do these ratings average out to an overall rating of "Less than Satisfactory"? The Navy lacked a rational basis for giving GDMA a lower rating than any of the company's references and for weighing the negative comments on the questionnaires far more heavily than the references themselves did.

It is important to understand that each of these reviews had an overall past performance rating, nine subcategory ratings, and a section for comments. It is true that one of the two reviewers for the South Asia contract listed a number of problems that he encountered with GDMA in the performance of the contract. Even this reviewer, who rated GDMA "Satisfactory" overall, gave GDMA one "Better," four "Satisfactory," and four "Less than Satisfactory" subcategory ratings. And the primary reviewer for the South Asia contract, who gave GDMA a "Better" overall rating for the same contract, gave GDMA four "Outstanding," four "Better," and one "Satisfactory" rating for the same nine subcategory rating criteria. This reviewer noted in her comments some of the same problems, but also included positive comments such as, "[t]hey are very professional and their staff are very knowledgea-

ble and experience[d]." She further explained that, "[t]he ports in South Asia ha[ve] limited infrastructure and GDMA has the ability to support a carrier visit to Chennai with limited services available." In the other three contracts, there were a total of twelve "Outstanding," six "Better," and one "Satisfactory" subcategory rating. In light of this record, PPET did not have a rational basis for rating GDMA "Less than Satisfactory" overall for past performance.

PPET did its own cumulative version of the nine subcategory rating criteria, and its conclusions regarding the subcategories seem just as divorced from the underlying data as the overall ratings. For example, the PPET gave GDMA an overall rating of "Satisfactory" for the subfactor "Reliability and consistency of the company's key personnel." The individual ratings for this subfactor, however, were three "Outstanding" ratings, one "Better," and one "Satisfactory." Similarly, for the subfactor of "Timeliness in providing goods and/or services in accordance with the contract schedule," the PPET rated GDMA as "Satisfactory" even though GDMA's references gave it three "Outstanding" ratings, one "Better," and one "Satisfactory."

GDMA's past performance was not flawless, as the ratings clearly reflect. Certainly this record would have supported a past performance rating of "Better" or maybe even "Satisfactory," but there is no rational basis for PPET's decision to rate GDMA "Less than Satisfactory."

GDMA was one of only two bidders in the competitive range, and its price was roughly 64% lower than the other bidder. GDMA was rated equal to the other bidder on every factor except past performance, where the other bidder received a rating of "Better." Based on GDMA's lower price and equivalency in other areas, I believe that it would have had a substantial chance to receive the contract but for the Navy's errors regarding past performance. *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Therefore, I dissent.

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 9th day of August, 2013, the foregoing Petition for Rehearing En Banc was filed electronically and served on the following parties by electronic mail:

>Arlene Pianko Groner
>United States Department of Justice
>Civil Division, National Courts
>1100 L Street, N.W., Room 7024
>Washington, D.C. 20005
>arlene.groner@usdoj.gov
>
>*Counsel for the United States*
>
>
>Walter A.I. Wilson
>Husch Blackwell LLP
>750 17th Street, N.W. #900
>Washington, D.C. 20006
>walter.wilson@huschblackwell.com
>
>*Counsel for MLS-Multinational Logistic Services LTD.*
>
>
>   /s/ David S. Black
>David S. Black
>HOLLAND & KNIGHT LLP
>1600 Tysons Boulevard, Suite 700
>McLean, Virginia 22102
>703-720-8600
>703-720-8610 (facsimile)